[Cite as *State ex rel. Nissin Brake Ohio, Inc. v. Indus. Comm.*, 127 Ohio St.3d 385, 2010-Ohio-6135.]

THE STATE EX REL. NISSIN BRAKE OHIO, INC., APPELLEE, *v.* INDUSTRIAL

COMMISSION OF OHIO, APPELLEE; STEVENS, APPELLANT.

[Cite as *State ex rel. Nissin Brake Ohio, Inc. v. Indus. Comm.*,

127 Ohio St.3d 385, 2010-Ohio-6135.]

*Workers' compensation — Deference to the Industrial Commission — Stephenson*

*factors not applicable here — Judgment reversed.*

(No. 2009-1356 — Submitted October 12, 2010 — Decided December 20, 2010.)

APPEAL from the Court of Appeals for Franklin County,

No. 08AP-909, 2009-Ohio-2993.

_____

**Per Curiam**.

**{¶ 1}** At issue is appellant Carolyn Stevens's eligibility for permanent total disability compensation. Stevens was industrially injured in 1998, and her workers' compensation claim includes several significant low-back conditions. In 2006, Stevens began to experience shortness of breath and bilateral lower-extremity edema that are not related to her industrial injury.

**{¶ 2}** In 2008, appellee Industrial Commission of Ohio awarded Stevens permanent total disability compensation based on three documents. The first was the December 29, 2006 report of Dr. David A. Ware. He prohibited Stevens from bending, squatting, twisting, and repetitive or heavy lifting. Occasional lifting not to exceed ten pounds was permitted, and he recommended that Stevens be permitted to sit or stand as needed. He indicated that she was capable of "only sedentary or less than sedentary duties" and concluded:

**{¶ 3}** "In summary, while her symptoms have fluxuated [sic] somewhat recently and are certainly influenced by comorbid medical conditions, it appears unlikely that she would be a candidate for sustained employment. Her history

over the past eight years has not demonstrated any periods of sustained functional capacity which would allow regular employment. If any employment were attempted, it would be with the extensive restrictions outlined above."

{¶ 4} The commission also relied on a November 2006 Functional Capacity Evaluation ("FCE") done by Angela L. Brinkman, a rehabilitation evaluator. Brinkman concluded that Stevens was "able to work at the Sedentary physical demand Level for activity above the waist and the less than Sedentary physical demand level for activity below the waist." While not specifically so stating, Brinkman appears to be basing this assessment solely on the allowed conditions, although the edema and shortness of breath were recorded in her report.

{¶ 5} Finally, the commission cited a May 18, 2007 Bureau of Vocational Rehabilitation ("BVR") closure letter from Cheryl Lentz, a rehabilitation counselor:

{¶ 6} "[T]he Stevens * * * case with BVR is currently open, but in an 'Interrupted Status.' She was placed in this status following advice of her medical doctor.

{¶ 7} "* * * She completed a Functional Capacities Evaluation on November 15, 2006, however since that time, her physical health has declined. * * * [T]he results [of that evaluation] are now invalid as she has experienced additional medical problems. * * *

{¶ 8} "* * * [Stevens] reports on-going medical problems that prevent her from obtaining employment; therefore, given this information, we are unable to provide job placement assistance."

{¶ 9} Stevens does not dispute that the decline in her overall health and "additional medical problems" referred to by Lentz are her nonallowed conditions.

**{¶ 10}** The commission found that this evidence established that Stevens was physically unable to engage in sustained remunerative employment due to her allowed conditions, which mooted consideration of the nonmedical disability factors such as age, education, skills, and work record, listed in *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 172-173, 31 OBR 369, 509, N.E.2d 946. Stevens's employer, appellee Nissin Brake Ohio, Inc., filed a complaint in mandamus in the Court of Appeals for Franklin County, challenging the commission's award of permanent total disability compensation.

**{¶ 11}** The court of appeals found that the commission had abused its discretion in interpreting the evidence to medically prohibit all employment and ordered the commission to consider the *Stephenson* factors. This judgment has prompted Stevens's appeal to this court as of right.

**{¶ 12}** Permanent total disability is defined as the inability to perform sustained remunerative employment. *Stephenson*, 31 Ohio St.3d at 170, 31 OBR 369, 509 N.E.2d 946. It involves consideration of the claimant's allowed medical conditions as well as the nonmedical factors enumerated in *Stephenson* at 173, now commonly referred to as *Stephenson* factors. In instances where the evidence establishes that the allowed medical conditions, standing alone, prevent all employment, consideration of the *Stephenson* factors is obviously unnecessary. *State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood* (1991), 60 Ohio St.3d 38, 39-40, 573 N.E.2d 60.

**{¶ 13}** Once it has been determined that the allowed medical conditions, either alone or together with the *Stephenson* factors, foreclose sustained remunerative work, permanent total disability compensation is payable, regardless of the presence of other disabling conditions that are unrelated to the industrial injury. *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452, 454, 619 N.E.2d 1018. If the inability to work, however, is due to allowed and nonallowed conditions *acting in tandem*, compensation cannot be paid, because a claimant can

never be compensated for a disability that is caused, in whole or part, by medical conditions that are unrelated to the industrial claim. *Waddle* at 455; *Fox v. Indus. Comm.* (1955), 162 Ohio St. 569, 576, 55 O.O. 472, 125 N.E.2d 1.

{¶ 14} In the case at bar, allowed medical conditions, nonallowed medical conditions, and the *Stephenson* factors are all at issue. The court of appeals returned the cause to the commission for it to consider claimant's *Stephenson* factors. *State ex. rel. Nissin Brake Ohio, Inc v. Indus. Comm.* Franklin App. No. 08AP-909, 2009-Ohio-2993, ¶ 7. Stevens challenges that decision, arguing that her allowed conditions alone are sufficient to support her claim that she is permanently and totally disabled. Nissin disagrees, and while not specifically objecting to a return to the commission, suggests that a *Stephenson* review is unnecessary because Stevens cannot satisfy the baseline causal relationship between industrial injury and disability. Nissin proposes that Stevens's nonallowed medical conditions are contributing to her disability because they have prevented her from completing a BVR program intended to enhance her employability. Because a claimant can never be compensated for a disability that is partially due to nonallowed conditions, Nissin contends that compensation must be denied.

{¶ 15} Stevens urges us to reject Nissin's position per se, contending that under *Waddle*, a claimant's nonallowed medical conditions are irrelevant. Stevens misreads that seminal case. *Waddle* does not hold irrelevant a claimant's nonallowed medical conditions in a permanent total disability determination. It simply holds that if the allowed conditions, alone or with *Stephenson* factors, prevent a person from working, the "mere presence" of other equally disabling conditions cannot be a basis for denying compensation. *Waddle,* 67 Ohio St.3d at 455, 619 N.E.2d 1018. Where the inability to work, however, arises from a *combination* of allowed and nonallowed conditions, the latter is no longer "merely

present," but is instead *actively contributing to the disability,* and compensation cannot be paid.

{¶ 16} In this case, Nissin's proposition — which might be viable under other circumstances – lacks merit. Barring extenuating circumstances, we indeed "expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential," so rehabilitation is relevant to permanent total disability analysis. *State ex rel. Wilson v. Indus. Comm.* (1997), 80 Ohio St.3d 250, 253, 685 N.E.2d 774. There are, however, many different types of rehabilitation services. Some are geared to the medical side of disability, such as work hardening or pain management. Others are vocationally or educationally oriented and involve the acquisition of new skills or the completion of a GED.

{¶ 17} If a claimant is unable to participate in a medically oriented rehabilitation program due to nonindustrial health problems, Nissin could have a legitimate argument if the anticipated level of physical improvement is compatible with the claimant's *Stephenson* profile. If, for example, the goal of rehabilitation is to improve a person's pain tolerance to the point of permitting sedentary employment, failure to complete that program — regardless of the reason — seems relevant only if he/she is a viable candidate for that type of work. Even in the best of times economically, an elderly claimant with a fifth-grade education and a history of heavy labor is probably not a realistic candidate for a desk job. On the other hand, a person with clerical skills and experience is, and in that case, the failure to complete a program that would permit sedentary employment may be material to a permanent total disability analysis.

{¶ 18} With vocationally or educationally directed programs, the opposite analysis can be used: is the claimant medically able to perform the type of work that the program is intended to facilitate? If the medical evidence indicates that the claimant is physically incapable of all work, the acquisition of a GED, for

example, is meaningless from an employment standpoint. A failure to complete that program should therefore be irrelevant to permanent total disability analysis, both from a logical and legal standpoint. Work skills and education are, after all, enumerated *Stephenson* factors, and if the commission finds it unnecessary to consider those factors, a claimant's failure to complete a *Stephenson*-oriented rehabilitation program does not bar a finding of permanent total disability.

{¶ 19} In the case at bar, Stevens was unable to participate in what the BVR described as "job placement assistance." There is no evidence that this program was geared toward improving Stevens's physical abilities, so we deem it a *Stephenson*-oriented program. Her failure to complete that program is therefore irrelevant if any of the evidence cited by the commission supports its determination that Stevens's allowed physical conditions alone render her incapable of all work.

{¶ 20} In reviewing that order, we are mindful that the commission is exclusively responsible for evaluating evidentiary weight and credibility and has "substantial leeway in both interpreting and drawing inferences" from it. *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880, ¶ 34. The commission, moreover, is considered to be the expert on permanent and total disability. *State ex rel. Jackson v. Indus. Comm.* (1997), 79 Ohio St.3d 266, 271, 680 N.E.2d 1233. In this case, the commission found that Stevens's allowed conditions precluded all employment. This conclusion was based on three reports. Analysis focuses on two.[1]

{¶ 21} Brinkman's November 2006 FCE report stated that Stevens could work at a sedentary level above the waist and a "less than Sedentary" level below. Dr. Ware, in his December 2006 narrative, used the same terminology. Because

---

1. The May 18, 2007 BVR closure letter merely states that Stevens's case file is closed and does not indicate whether Stevens is medically able to work.

neither report specifically said that Stevens could do *no* work, the court of appeals held that the reports did not support the conclusion that Stevens was medically incapable of all remunerative employment.

{¶ 22} The court of appeals correctly observed that there is no explicit declaration in either report that Stevens's allowed conditions prevented all gainful employment. Both reports, however, describe an extremely limited capacity for work that is fraught with restrictions. Both described Stevens's work capacities, at one point, as "less than sedentary." Dr. Ware, moreover, stated that it was "unlikely that she would be a candidate for sustained employment. Her history over the past eight years has not demonstrated any periods of sustained functional capacity which would allow regular employment." Concededly, Dr. Ware refers to Stevens's other conditions — presumably her edema and respiratory conditions. These nonallowed conditions, however, appeared to arise just a few months before he wrote his report,[2] meaning that for most of the prior eight years, Stevens's inability to work was due to the allowed conditions alone. Given the commission's substantial prerogative to draw inferences, we find that the commission did not abuse its discretion in concluding that Stevens's allowed medical conditions foreclosed employment.

{¶ 23} We accordingly find it unnecessary to order the commission to consider either the *Stephenson* factors or the closure of Stevens's BVR file. The judgment of the court of appeals is hereby reversed.

Judgment reversed.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

_____

2. Dr. Ware's report was written in December 2006. The first mention of the nonindustrial conditions was in the November 2006 FCE, which indicated that both conditions had arisen since July 2006.

Porter, Wright, Morris & Arthur and Darin L. Van Vlerah, for appellee Nissin Brake Ohio, Inc.

Richard Cordray, Attorney General, and Sandra E. Pinkerton, Assistant Attorney General, for appellee Industrial Commission.

Larrimer and Larrimer and Thomas L. Reitz, for appellant.

_____