[Cite as *State ex rel. Gonzales v. Morgan,* 131 Ohio St.3d 62, 2011-Ohio-6047.]

THE STATE EX REL. GONZALES, APPELLANT, *v.* MORGAN;

INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Gonzales v. Morgan,* 131 Ohio St.3d 62, 2011-Ohio-6047.]

*Workers' compensation—Permanent total disability—Nonmedical vocational factors—Failure to participate in educational rehabilitation.*

(No. 2010-0964—Submitted September 20, 2011—Decided December 1, 2011.)

APPEAL from the Court of Appeals for Franklin County,

No. 09AP-752, 2010-Ohio-1959.

_____

**Per Curiam.**

{¶ 1} Appellee, Industrial Commission of Ohio, denied appellant's, Trevor Gonzales's, application for permanent total disability compensation ("PTD") in an order that emphasized his refusal to participate in vocational rehabilitation. Gonzales challenges that decision.

{¶ 2} Gonzales never returned to any type of employment after his 2003 industrial injury, and he filed for PTD six years later. The commission considered Gonzales's application and concluded that he was physically capable of sedentary employment. It then considered Gonzales's nonmedical disability factors as required by *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946. The commission found that Gonzales's age did not prohibit reemployment and felt that his "varied work history is a positive factor that highlights his ability to learn new jobs skills and to work in different work environments."

{¶ 3} The bulk of the commission's analysis, however, focused on Gonzales's illiteracy. The commission acknowledged that this deficiency impaired his ability to perform sedentary employment but concluded:

**{¶ 4}** "[T]his factor is greatly outweighed by the fact that the Injured Worker has not participated in any type of rehabilitation program to negate his ability to not [sic] read, write, or do basic math very well. The evidence in the claim file notes that two letters were sent to the Injured Worker on 01/05/2004 and 03/12/2004 which found that the Injured Worker was not feasible [sic] to participate in a vocational rehabilitation program based upon his decision to not participate in such a program or his failure to contact and return phone calls in regards to participating in a rehabilitation program. Therefore, based upon the Injured Worker's failure to undergo appropriate and reasonable vocational rehabilitation to increase his residual functional capacity and/or obtain new marketable employment skills and to improve upon his ability to write, read, or do math is the basis for the denial of his * * * permanent total disability application. The Injured Worker has presented no evidence that he is unable to participate in any type of vocational rehabilitation program."

**{¶ 5}** Gonzales filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in denying PTD. The court of appeals, speaking through its magistrate, disagreed. It cited the commission's exclusive authority to evaluate vocational evidence and stressed that Gonzales had refused vocational rehabilitation "when there was no evidence that he would not benefit from such services." Franklin App. No. 09AP-752, 2010-Ohio-1959, ¶ 23. Ultimately, the court of appeals concluded that the commission did not abuse its discretion in deciding to "hold relator accountable for this failure."

**{¶ 6}** Gonzales now appeals to this court as a matter of right.

**{¶ 7}** Contrary to Gonzales's suggestion, illiterate persons are neither unemployable nor, once injured, inherently permanently and totally disabled. Gonzales himself demonstrates the fallacy of the former by having worked for decades without the ability to read or write. As to the latter, many illiterate

claimants successfully transition to other postinjury employment, often helped by their successful completion of vocational retraining and remedial education.

{¶ 8} We have discussed vocational rehabilitation in depth on two occasions. In *State ex rel. Wilson v. Indus. Comm.* (1997), 80 Ohio St.3d 250, 685 N.E.2d 774, the commission's rehabilitation division assessed the rehabilitation potential of a PTD applicant and recommended, among other things, remedial education classes. An individualized program was prepared, but the claimant refused to participate. This refusal was one of the reasons why PTD was later denied, and the claimant challenged that decision.

{¶ 9} We upheld that decision. We affirmed that in a PTD analysis, "the relevant vocational inquiry is 'whether the claimant may return to the job market by using past employment skills or those skills which *may be reasonably developed*.' " (Emphasis added.) Id. at 253, quoting *State ex rel. Speelman v. Indus. Comm.* (1992), 73 Ohio App.3d 757, 762, 598 N.E.2d 192.

{¶ 10} Continuing, we wrote:

{¶ 11} "The commission found that claimant's age afforded him the opportunity to improve the educational deficits on which he so heavily relies in asserting that he is incapable of sustained remunerative employment. Reduction or elimination of these deficits, in turn, would facilitate the acquisition of new skills. We not only sustain the commission's reasoning, but feel compelled to add an observation of our own.

{¶ 12} "Not only does claimant have the opportunity to improve his re-employment potential, he has had this opportunity for the sixteen years he has not worked since his injury. Despite the fact that claimant was only age thirty-seven when injured, there is no evidence that claimant ever made an effort to pursue remedial education or obtain his G.E.D. The record does reflect that claimant did not respond when contacted by the commission's Rehabilitation Division about establishing a rehabilitation plan.

**{¶ 13}** "We view permanent total disability compensation as compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed. Thus, it is not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential. While extenuating circumstances can excuse a claimant's nonparticipation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinized." Id., 80 Ohio St.3d at 253-254, 685 N.E.2d 774.

**{¶ 14}** In 2010, we had another opportunity to comment on the role of rehabilitation in *State ex rel. Nissin Brake Ohio, Inc. v. Indus. Comm.,* 127 Ohio St.3d 385, 2010-Ohio-6135, 939 N.E.2d 1242. There, the employer challenged an award of PTD to a claimant who began a vocational rehabilitation program but could not finish it due to health problems unrelated to her industrial injury. The employer argued that because nonallowed medical conditions prevented the claimant from completing a rehabilitation program designed to enhance her employment prospects, those conditions were impermissibly contributing to her disability and foreclosed compensation.

**{¶ 15}** We acknowledged that under certain circumstances, Nissin's position could have merit. We began by distinguishing between medically oriented and vocationally oriented rehabilitation programs:

**{¶ 16}** "If a claimant is unable to participate in a medically oriented rehabilitation program due to nonindustrial health problems, Nissin could have a legitimate argument if the anticipated level of physical improvement is compatible with the claimant's *Stephenson* profile. If, for example, the goal of rehabilitation is to improve a person's pain tolerance to the point of permitting sedentary employment, failure to complete that program—regardless of the reason—seems relevant only if he/she is a viable candidate for that type of work.

Even in the best of times economically, an elderly claimant with a fifth-grade education and a history of heavy labor is probably not a realistic candidate for a desk job. On the other hand, a person with clerical skills and experience is, and in that case, the failure to complete a program that would permit sedentary employment may be material to a permanent total disability analysis.

{¶ 17} "With vocationally or educationally directed programs, the opposite analysis can be used: is the claimant medically able to perform the type of work that the program is intended to facilitate? If the medical evidence indicates that the claimant is physically incapable of all work, the acquisition of a GED, for example, is meaningless from an employment standpoint. A failure to complete that program should therefore be irrelevant to permanent total disability analysis, both from a logical and legal standpoint. Work skills and education are, after all, enumerated *Stephenson* factors, and if the commission finds it unnecessary to consider those factors, a claimant's failure to complete a *Stephenson*-oriented rehabilitation program does not bar a finding of permanent total disability." Id. at ¶17-18.

{¶ 18} Analyzing the employer's arguments under the second theory, we upheld the PTD award. We found that because there was evidence supporting the commission's finding that the claimant's allowed conditions prevented sustained remunerative work, her failure to complete rehabilitation—regardless of the reason—did not foreclose PTD.

{¶ 19} There are two immediate distinctions between *Nissin Brake* and the case at bar. First, Trevor Gonzales is medically capable of sustained remunerative employment, so his rehabilitation potential is germane to the analysis. Second, this case does not involve a claimant who began a rehabilitation program but was then prevented from finishing due to circumstances beyond the claimant's control. To the contrary, Gonzales refused even to respond to preliminary inquiries from rehabilitation services.

**{¶ 20}** The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Weisser & Wolf and Lisa M. Clark, for appellant.

Michael DeWine, Attorney General, and Allan K. Showalter, Assistant Attorney General, for appellee.

_____